Case No. 25-1278, Jonelson Dorr v. Pamela J. Bondi. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, Your Honors. Ethan Horowitz and my colleague Claire McGuire of the Northeast Justice Center on behalf of the petitioner. May it please the Court, the petition that brings us here today calls upon the Court to interpret a provision of the Immigration and Nationality Act, that is Section 237A2Bi, which authorizes the executive branch to remove from the United States admitted non-citizens who are convicted of crimes related to controlled substances. As the Court is aware, this amendment to the Immigration and Nationality Act was enacted by Congress in 1986 as part of the Anti-Drug Abuse Act of that same year, and I don't think it's a controversial characterization of that act when I say that the purpose, that Congress's purpose in making this law was to allow the executive to remove from the United States individuals whom the executive deemed to be culpable and dangerous criminal non-citizens who were anathema to the country's drug laws and current war on drugs. The difficult question before this Court is a question of how did Congress intend for the executive branch to determine culpability and dangerousness when assessing a non-citizen covered by, an admitted non-citizen covered by these amendments. Culpability and dangerousness in the sense that how, you know, the executive branch was supposed to remove these non-citizens from the country to prevent them from committing more mischief. Let me ask you, you can see under federal law the offense he had under Massachusetts law, it's still a federal offense, correct? So under the categorical approach, Your Honor, which is the difficulty here, is at the time of the conviction, it was a federally prescribed substance and at the time of the removal proceedings it was not, which gives the courts two possibilities for determining how Congress wanted to assess Mr. Doar's culpability and dangerousness, right, whether he was worthy of being removed from the United States. Let me ask you, let's assume, because we're dealing with hemp, with his arrest message, let's assume it was for heroin or cocaine and let's assume Congress tomorrow changes it, you would say the result would still be the same. If it changes, it's retroactive? That's correct, Your Honor. I think the best way of looking at this provision of the Immigration and Nationality Act is the same way that the Court has looked at similar provisions in the sentencing guidelines that were adopted by the Sentencing Reform Act of 1984, which is, and I'll quote the Abdul Aziz opinion, that this scheme is, quote, reasonably understood to be based in no small part on a judgment about how problematic the past conduct is when viewed as of the time of the sentencing itself, end quote. Of course, here we're talking about a removal proceeding instead of a sentencing. But the idea, Your Honors, is that Congress intended, at least this is our position and I understand it's a difficult question, that Congress intended the executive to look at a non-citizen who had been convicted of a drug crime in prior years and look at that drug crime not from the lens of culpability and dangerousness at the time of the conviction but through the lens of culpability and dangerousness now. I hear your argument and particularly, I think specifically as it applies to the petitioner in this case, it really works well. I'm worried about a couple things. One of it's just the practicality of immigration lawyers and criminal defense lawyers advising clients about what to do at the time that it really matters for them to make a decision about that criminal prosecution. And if we agree with you, I just don't see how it ever works for people who are dealing with both potentially immigration consequences and criminal consequences. They're never going to get sound advice about what to do. I would respectfully disagree, Your Honor. I think the way that the statute is drafted provides an answer to that question. The statute was made retroactive by Congress, right, with the sense that a prior conviction will be judged by current standards at the time of the enactment was the 1970 Controlled Substances Act as it existed in 1986. And I think the statutory language was sufficient to overcome that presumption of retroactivity. The question Your Honor poses is whether the statutory language was sufficient to overcome the presumption of retroactivity for years and years and years into the future. The Fifth Circuit looked at that issue in Lopez-Ventura, and I think the Fifth Circuit got it right in the sense that Congress was clear that this assessment of culpability and dangerousness was meant to be retroactive for people in 1986, such that this current standard could be applied to prior convictions. But Congress was not clear enough, absolutely not clear enough, to allow that retroactive effect to continue for years and years into the future. And so what we have, Your Honor, is what my colleague and I have described as a one-way ratchet. And the one-way ratchet isn't a policy distinction. I would object strenuously to that. Yeah, so this is where I just, I think you, I don't, your argument falls apart to me, I think. You're not arguing that that statute means that all, that we are supposed to apply retroact, like look at all this retroactively, right? All these future people, I don't, I don't really understand what your argument is as  Right, because Your Honor, retroactivity has two facets, right? Retroactivity as of the time Congress enacted the statute, and then retroactivity moving forward as the CSA changes. And I think the question the court has to ask, or that you, that Your Honors have to ask yourself is, what did Congress intend? Which I think is clear, Congress intended to remove all non-citizens, as many non-citizens as possible in order to wage the war on drugs. But then the second question is, what did, how could we reasonably interpret what Congress actually written, or wrote? And I think what Congress intended was for this statute to apply as broadly as possible. What they wrote only allowed for retroactive effect as of 1986. And so this idea that, that the statutory language overcame the presumption of retroactivity for years and years and years into the future, I think it's just, that's not supported by the statute. And so I think you have a situation then, where again, this one-way ratchet is the best way to interpret this very confusing and difficult statute. In the sense that Congress wanted to remove as many criminal aliens as possible. Congress wanted to wage this war on drugs. Congress wanted to be able to take this, these current Controlled Substance Act standards and apply them to as many drug convictions as possible, even those that predated. Let me ask you this. If we write an opinion, as you argue we should, and find for you, what happens in a different circumstance then? Someone's convicted of an offense that then later the federal statute becomes more expansive. And suddenly that person who was not removable when they pled to a state crime conviction is. I think at that juncture, Your Honor, they get the benefit of the prior law. Just like the sentencing reform act, Your Honor.  Because we will have written opinions saying the exact opposite. Well, no, Your Honor. I think the opinion that Mr. Doar wants, and I think the correct answer is more nuanced than that. I think the correct answer isn't simply that every change in the CSA applies retroactively for years and years into the future. I think the distinction is that any changes that harm a non-citizen don't apply because that isn't what Congress wrote. Again, the distinction between retroactivity in 1986 versus retroactivity for years and years and years into the future. And you want us to interpret that based strictly upon the policy concerns? No, Your Honor. We would ask that you apply that, or I would ask that you apply that, based on a fair reading of the statute. The statute was clearly meant to be retroactive. I don't think there's any dispute that Congress intended this statute to reach as broadly and retroactively as possible. The question is, can this court fairly interpret that language, not just to create a retroactive effect as of 1986, which clearly Congress intended and Congress wrote, but whether this court can also look at that statutory language to overcome the presumption of retroactivity in order for future changes in the Controlled Substances Act to apply retroactively as they happen. And I think the answer is no. I don't think this is – I mean, of course, my colleague and I want this to be the policy, but we wouldn't be here arguing for it if this was just a policy decision. Can I ask you this question, and I know you don't take a position on this in your brief. What would be the specific moment in time that the agency should look at the federal schedule list? Is it when your client is charged as removable, or when your client is ordered removed? So that's a good question, Your Honor, and I've given this quite a bit of thought since my brother called me out on it in the brief, and I think the best way to look at this problem is to look at the Fair Sentencing Act, 1984, and use that as an analog, because that's a contemporaneous piece of legislation through which Congress told courts to assess the culpability and dangerousness of those subject to the scheme by looking at current law instead of past law. And so I think the analog would be at the time that a charging document is issued. I think that at the time the executive issues a charging document, just like when a sentencing proceeding is convened, I think that would be the CSA schedule that an immigration judge, the executive branch, should look at. You mentioned 1994 Fair Sentencing Act. Fair Sentencing Act, 2008 or 2012, I think. I'm sorry, Your Honor, the Sentencing Reform Act of 1984. Oh, the Sentencing Reform Act. Yes, the Sentencing Reform Act of 1984, and the reason I raise it, Your Honor, is because that is an analogous statutory scheme adopted by Congress not two years before, which again assessed a convicted criminal's culpability and dangerousness by looking at the law now. And I just would end, Your Honor, by saying that this, what I'm proposing here is how Congress orders non-citizens removed from the United States. Thank you, Your Honors. Okay. Thank you. Let's hear from the Governor. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. A unanimous judiciary has rejected Petitioner's argument. Every court to consider has had a time of conviction approach. It meets the statute and encourages the policy's efficiency and fairness and predictability. Petitioner comes before this Court for the first time, despite not having filed a reply brief, now suggesting a new way in which a policy agreement should answer the statute. What Petitioner doesn't actually address and has never addressed is the statute. Who has addressed? The Second Circuit in Doe, the Third Circuit in Martinez, the Eleventh Circuit in Gordon, the Ninth Circuit in Medina Rodriguez, the Eighth Circuit in Salinas, and if we want to go outside this context, the Supreme Court in Brown. This is not a situation where Abdul Aziz's understanding of sentencing laws apply. Abdul Aziz basically said, well, the concern in the immigration context doesn't occur because in the sentencing context, the notions of fairness and notice will be accomplished because the person will be charged with a second crime. That won't occur in this context. A person like Petitioner walked into Massachusetts State Court, charged with possession with intent to distribute, pled guilty, and at that time, at the time of conviction, which is what the statute says, what the categorical analysis says, at the time of conviction, was removable. All the government and Doe, Martinez, Gordon, Medina, Rodriguez, Salinas, says— Let me ask you this. Is the view of those cases, what you're arguing is, clicking in, the act that creates the removability, you have to look at what the law is at what particular time. And if somebody violates the law or the equivalent of the federal law at that time, if it's violating the law, so when you committed that offense, you violated the law. In the future, it's not a violation of the law. You still violated the law at that time. So that's what you're arguing, correct? Great. So what does the statute say? Any alien who any time after admission has been convicted. Why is the focus on conviction? Because when we imported the categorical approach into the civil context from the criminal context, we did that because the focus is on a conviction. And particularly after the Supreme Court's decision in Padilla, which said we're concerned about whether or not when a person pleads guilty that there were the immigration consequences. Well, what petitioners—at this point, it's unclear what petitioners' retroactive in the future argument—I don't understand it, to be blunt, Your Honor. Retroactivity in the future is not a concept that makes sense. Let me ask you this question. I'm a little—I mean, you can tell I'm a little bit—I agree with you, I think. I am a little confused about the retroactivity argument. But he points to language in that 1986 Act that says that the amendment to base removability on the list in the Controlled Substance Act shall apply to convictions occurring before, on, or after the date of the 1986 Act's enactment. I think that's the text that he's then extrapolating from. I agree, Your Honor. I think part of the difficulty is when petitioners are talking about retroactivity of the statute, what he actually means is retroactivity of the amendment. Right? That is my understanding. But the problem is then it says retroactivity in the future. I don't—with respect, Your Honor, I don't understand the concept of retroactivity. He's saying that if a scheduled drug is removed from the schedule, like what his client was convicted of, that at the time of his removal it shouldn't be considered the conviction because there's no longer a conviction for the particular drug, that that shouldn't count. That's the bottom line that he's arguing. Well, I guess, Your Honor, petitioners are going to have to answer that question after filing an opening brief and not filing a reply because what that actually was suggesting is a 2018 farm bill was retroactive. Except on page 2 of their brief, they specifically say the farm bill was effective in December of 2018. So, Your Honor, I think there's a difficulty. If no one can figure out what petitioner's answer is actually arguing, that really raises a question. Well, I mean, ultimately he is also arguing what Judge Thompson just said, and also I think connected to that is that there's something that feels a little— there's a fairness principle to that issue, at least as it applies to this particular petitioner. Well, Your Honor, I think the difficulty, it applied to the same petitioners in Doe and Martinez, Rodriguez, Gordon, Salinas. In fact, Medina, Rodriguez, and Salinas were explicitly this situation. It was pre-1918 convictions for marijuana. I believe trafficking, they were trafficking convictions. And neither the Eighth Circuit nor the Ninth Circuit had any issue because we are looking at statutory interpretation. Well, I mean, the big difference is marijuana is still there, whereas hemp isn't, or certain types of possession and sale of hemp isn't any longer. So the Congress has deemed that to be a non-criminal conduct now? Now, yes, possession of hemp is now, but that's not the question about now. Because, again, I think Your Honor's question really sort of only amplifies the problems created when Padilla was meant to create fairness and clarity for everyone because petitioner finally, despite not filing a reply brief, has chosen to say, well, it is the time of apparently the NTA being issued that determines. That's petitioner's new position based on a never-before-cited statute. But the thing is, and again, all these cases, and even the Supreme Court's decision in Brown, which in fact is a criminal case, the concerns about fairness don't override the statute. They don't override a categorical approach. They don't override, and particularly in this situation, the clarity that the agency's rule and the 2nd, 3rd, 11th, 8th, 9th Circuit's rules all provide to people walking to court pleading guilty because they're supposed to be able to provide under Padilla some degree of an answer to a criminal defendant what the possible immigration consequences are. And if this court were to go against every circuit to consider it and say, well, it's apparently now time for the notice to appear, criminal defense gets to walk into court and say, hey, you're pleading guilty. Who knows? Because what will depend on is when does DHS issue the NTA. That will determine it. Except the reality is given that it's been a one moment brought up in an argument for the first time, what happens when it does change after the NTA? Are we not going to be talking about fairness then? We will be. But what we can talk about now is the statute and what the unanimous judiciary's approach and the agency's approach does. It creates fairness, clarity, and predictability to both individuals and the system itself. Unless you're in honors to have any further questions, we submit the rest in the briefs. Thank you. Thank you, your honors.